IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KATHLEEN J. : <br> : <br> v.    : <br> : <br> FRANK BISIGNANO, : <br> Commissioner of Social Security : <br> : | NO. 25-CV-1132  SWR |

**O P I N I O N**

SCOTT W. REID                                                                      DATE:  October 29, 2025
UNITED STATES MAGISTRATE JUDGE

      Kathleen J. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that the Request for Review should be denied and judgment granted in favor of the Agency.

I.    *Factual and Procedural Background*

      Kathleen J. was born on November 25, 1991.  Record at 164.  She completed high school.  Record at 192.  She worked in the past as a sales clerk in a convenience store, and as a housekeeper in a hotel.  *Id*.

      On February 16, 2023, Kathleen J. filed an application for SSI, alleging disability as of September 1, 2020, on the basis of depression, a bipolar disorder, and an anxiety disorder.  Record at 164, 191.  Her application was denied initially on March 29, 2023, and upon reconsideration on July 14, 2023.  Record at 81, 89.  She then sought review *de novo* by an Administrative Law Judge ("ALJ").  Record at 121.

A hearing before an ALJ was held on March 5, 2024. Record at 34. On April 30, 2024, however, the ALJ issued a written decision denying benefits. Record at 17. On January 7, 2025, the Appeals Council denied Kathleen J.'s request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner for Social Security. Record at 1. Kathleen J. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

III.    *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that Kathleen J. suffered from the severe impairments of depression, anxiety, and bipolar disorder. Record at 20. She found, however, that none of the impairments and no combination of impairments met or medically equaled the severity of a listed impairment. Record at *Id*.

The ALJ determined that Kathleen J. retained the RFC to perform a full range of work at all exertional levels, but with certain non-exertional limitations, writing;

> The claimant can understand and remember simple instructions and can maintain attention, concentration, and persistence to carry out simple instructions. The claimant cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. The claimant can occasionally interact with supervisors and coworkers and can have incidental contact with the general public. The claimant can deal with infrequent changes in a routine work setting.

Record at 23.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Kathleen J. could not return to her prior work, but could work in such jobs as a commercial cleaner, a car cleaner, or a janitor. Record at 28. She concluded, therefore, that Kathleen J. was not disabled.

In her request for review, Kathleen J. argues that the ALJ wrongly evaluated the opinions of the state agency's non-examining mental health experts. She argues, as well, that the ALJ wrongly failed to credit the opinions of her treating mental health practitioners.

IV.    *Discussion*

    A.    *The State Agency Mental Health Experts*

The ALJ determined that Kathleen J. had moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself. Record at 21-2.

3

By contrast, Valorie Lynn Rings, Psy.D., the state agency mental health expert who reviewed Kathleen J.'s records initially, found that she had no limitation in the ability to understand, remember, and apply information, although she had moderate limitations in the other three areas. Record at 77. John David Gavazzi, Psy.D., who reviewed Kathleen J.'s records on reconsideration, made the same findings as Dr. Rings. Record at 84.

As to both Dr. Rings and Dr. Gavazzi's evaluations, the ALJ wrote that they were "not consistent with the evidence in [the] file, including the claimant's fair insight at times and the claimant's reported memory limitations and is therefore not persuasive." Record at 26. Because the ALJ found Kathleen to have a moderate limitation in understanding, remembering, and applying information – rather than no limitation in this area – her RFC assessment was in this sense more limiting than those of the reviewing doctors.

Kathleen J., however, calls the ALJ's stated reason for disagreeing with Drs. Rings and Gavazzi "perfunctory and conclusory." *Request for Review* at 6. She argues that, although the ALJ obviously intended her assessment to be more restrictive than Dr. Gavazzi's, she failed to adopt certain of his findings which were actually more restrictive than the ALJ's assessment. Apparently referring to Dr. Gavazzi's check-off findings at page 86 of the Record, Kathleen J. writes:

> [T]he ALJ ignored Dr. Gavazzi's opinion of further moderate limitations in the abilities to maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting.

*Id*. at 7.

This is inaccurate. Rather than ignoring Dr. Gavazzi's findings, the ALJ included limits in the RFC assessment which are practically identical to Dr. Gavazzi's own narrative explanations of his check-off findings. As to concentration, Dr. Gavazzi wrote, in relevant part: "The claimant can make simple decisions. … The claimant can carry out very short and simple instructions." Record at 86. Similarly, the ALJ limited Kathleen J. to work requiring only simple instructions, without the pressure of a specific production rate. Record at 23. Regarding Kathleen J.'s social impairments, Dr. Gavazzi wrote "The claimant struggles with social skills", but went on: "The claimant communicates clearly, relates appropriately to familiar others, and behaves predictably in most social situations." Record at 86. To address this, the ALJ limited Kathleen J. to only occasional interaction with supervisors and coworkers, and even less contact with the public. Record at 23.

Further, Dr. Gavazzi wrote: "The claimant would be able to maintain regular attendance and be punctual." Record at 86. Therefore, by checking off that Kathleen J. was limited in her ability to "complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," he did not mean that she would be unable to work within normal expectations, as Kathleen J. suggests.

Dr. Rings summarized her findings as follows: "The claimant is able to meet the basic mental demands of competitive tasks on a sustained basis despite the limitations resulting from her impairment. The claimant can understand, retain, and follow simple instructions." Record at 79. Here, again, the ALJ's limitation of Kathleen J. to work with only simple instructions is consistent with the reviewing doctor's findings.

In short, the ALJ's RFC assessment was almost entirely consistent with the opinions of the agency reviewing physicians. Other than that the ALJ found Kathleen J. more limited in the ability to use information, the only notable exception to this is that ALJ did not include the limitation to "one and two-step tasks" found by the reviewing physicians. Record at 79, 86. However, she was by no means required to do so. Although the RFC determination must be supported by substantial evidence, it is the ALJ, and not any one physician, who makes the RFC determination. *See Chandler v. Commissioner of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Thus, there is no merit to Kathleen J.'s argument that the ALJ wrongly evaluated the reports by the reviewing mental health experts.

  B.  *The Treating Mental Health Experts*

    1. *Richelle Batson, LCSW*

In a Mental Medical Source Statement dated February 22, 2024, therapist Richelle Batson, LCSW, indicated that she had only seen Kathleen J. three times, so that she had "limited time … to gauge progress." Record at 545. However, she indicated that Kathleen J. had many limitations that would "preclude performance from 11%-20% of an 8-hour workday," including difficulties with working in coordination with or in proximity to others without being unduly distracted, and setting realistic goals or making plans independently of others. Record at 547, 548. She had lesser limitations, which "preclude performance for less than 10% of an 8-hour workday" in many other areas, such as understanding and carrying out very short and simple instructions; maintaining attention for 2-hour segments; maintaining regular attendance; sustaining an ordinary routine without special supervision; and dealing with normal work stresses. Record at 547-8.

6

Ms. Batson wrote of Kathleen J.: "Her anxiety symptoms would interfere with her ability to stay focused, complete tasks, and interact with others. Ongoing mood swings and irritability would impact her ability to cope with normal changes or work-related stressors." Record at 548. She indicated that Kathleen J. would be "off-task" for 20% of an 8-hour workday. *Id*. According to the vocational expert, this would be work-preclusive. Record at 69-70.

The ALJ did not agree. She wrote:

> This opinion is based on the claimant's reported symptoms, diagnoses, and observations of therapy sessions. However, Ms. Batson qualified her opinion by noting that she had limited time in which to gauge the claimant's progress. In addition, parts of this opinion are vague. For example, Ms. Batson does not state how the claimant's ability to cope with normal changes and work-related stresses would be impacted. Furthermore, this checklist-style form appears to have been completed as an accommodation to the claimant and includes conclusions regarding functional limitations with a limited rationale for those conclusions. This opinion is also not consistent with the evidence in the file, including the claimant's mental status examinations which noted the claimant to be fair to normal in insight and concentration [and] to exhibit normal behavior. This opinion is also inconsistent with the claimant reporting that she "doesn't have much anxiety" before medication was adjusted as a result of the claimant's pregnancy. For these reasons, this opinion is not persuasive.

Record at 26.

Kathleen J. argues that this analysis is not supported by the evidence of record, which consistently includes observations of abnormalities upon examination, and not only at times when she was pregnant. This is true, as far as it goes. For example, treatment records prepared by Julie Palmer, C.R.N.P., who prescribed Kathleen J.'s medicine, consistently noted an anxious and/or depressed mood. Record at 472, 477, 490, 493, 496, 738, 744, 750, 753, 756-7, 759, 762. She was sometimes noted to have "anxious, racing" thoughts. Record at 472, 491, 497. However, the ALJ did not ignore this, as she found Kathleen J. to suffer from severe depression and anxiety disorders, including a moderate limitation in concentration, and accordingly limited the work she could perform. Record at 21, 23.

Further, the same treatment notes from N.P. Palmer consistently describe Kathleen J. as fully oriented, with a cooperative attitude, normal speech, and normal memory, with no perceptual disorder, hallucinations, or illusions. Record at 472, 477, 490, 493-4, 497, 738, 744-5, 750, 756-7, 760. Her judgment was adequate and her insight normal or fair. Record at 472, 477, 491, 493-4, 497, 738, 744-5, 747, 750, 756-7, 760. Concentration and attention were "fair" or "adequate." Record at 472, 477, 491, 494, 497, 738, 745, 750, 756. 760. The more recent notes, from 2023 and 2024, described her thought processes as "clear, coherent, and goal-oriented," or with no disorder. Record at 738, 741, 744, 747, 750, 753, 756-7, 760, 763.

Thus, although Kathleen J.'s mental health examinations were not entirely normal, the ALJ was accurate in noting that she was found to have fair to normal insight and concentration. Since Kathleen J. was invariably fully oriented and cooperative, without perceptual disorders, the ALJ's conclusion that she exhibited normal behavior despite her depression and anxiety was also supported by substantial evidence.

Moreover, although Kathleen J. suffered from mental health issues at times when she was not pregnant, it is significant that she took less mental health medication during her pregnancies, since she was pregnant for much of the time under consideration. Kathleen J. had a baby in March, 2021, and became pregnant again in August or September of 2023. Record at 299, 738. She was, therefore, pregnant on her alleged disabled date of September 1, 2020, and pregnant with her next child bat her March 5, 2024, hearing. Record at 43.

Kathleen J. points out that, on October 20, 2023, she resumed taking Abilify, an antipsychotic, during pregnancy, because she was experiencing mental health symptoms. Record at 741. However, the treatment note for that day reads: "She would like to try to stay on as low of dosing as possible given pregnancy." Record at 742. A February 27, 2024, treatment note

8

reads: "Doesn't seem to be improving with Abilify. She doesn't want to do anything different for now. She is planning on dealing with the anxiety until the baby is born then she may try PRN Hydroxyzine after that." Record at 763. Clearly, the ALJ was entitled to note that Kathleen J.'s mental illness was not under optimal medical control during a large part of the relevant time period.

Finally, it is not really possible for the ALJ to know whether Ms. Batson submitted this form "as an accommodation" to Kathleen J., or whether the form reflects her firmly held opinions. Nevertheless, since Ms. Batson met Kathleen J. only three times before completing the form, it was not unreasonable for the ALJ to question the rationale for her conclusions.

      2.     *Julie Palmer, C.R.N.P.*

Julie Palmer, C.R.N.P., completed her Mental Medical Source Statement on February 29, 2024. Record at 561. She had been prescribing medication for Kathleen J. for just over a year. Record at 557.

N.P. Palmer checked off that "all performance in a regular work setting" was precluded for Kathleen J. in the areas of her ability to: work in coordination with or in proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. Record at 559-560.

In every other listed area, N.P. Palmer found that Kathleen J. suffered from limitations which would "preclude performance for more than 20% of an 8-hour workday," even in the ability to understand and remember very short and simple instructions, and the ability to ask simple questions. *Id*.

9

      N.P. Palmer explained these extremely limiting findings:

> Given high anxiety c paranoia and perseverations focus and attention is impaired. Struggles to interact with others given beliefs they are talking about her. Symptoms severely limited ability to work. Also depression and mood instability limit function when present.

Record at 560.

      The ALJ did not accept this opinion. She wrote:

> Ms. Palmer's opinion does not note that one of the reasons the claimant's mood and anxiety are not fully controlled at present is the claimant's reduction in medication during pregnancy, as she reported in her treatment notes. [Citing Record at 742]. This opinion is also not consistent with the claimant's ability to care for and travel with her minor children (Hearing March 5, 2024). It is also inconsistent with the evidence in the file, including Ms. Palmer's own treatment notes, which report adequate judgment, a cooperative attitude, fair insight, adequate concentration, no delusional thoughts, and good eye contacts. Therefore, this opinion is not persuasive.

Record at 27.

      This analysis of the evidence is not entirely satisfactory. Kathleen J. testified that she took her child on the train to visit the child's father "every seven or eight months." Record at 55. However, she also testified that these trips caused her great anxiety, and that she took the train because her anxiety would no longer let her drive. *Id*. It is also true that Kathleen J.'s second and third children were in her custody, although her oldest child lived with Kathleen J.'s mother (she was still pregnant with her fourth child). Record at 49. However, she testified that her mother often came to her house to feed and bathe the younger children when she could not motivate herself. Record at 53. The ALJ ignored this testimony, rather than explaining why she disagreed with it. As such, her statement that Kathleen J. could "care for and travel" with her small children is questionable.

Nevertheless, as discussed above, the record supports the ALJ's finding that Kathleen J. modified her medicine intake during pregnancy, so that her conditions were not fully controlled for much of the relevant time period. As is also discussed above, N.P. Palmer's own treatment notes consistently reported adequate judgment, a cooperative attitude, fair insight, and adequate concentration, with no delusional thoughts. As a whole, therefore, the ALJ had a substantial evidentiary basis for failing to credit N.P. Palmer's report.

Finally, Kathleen J. argues that the ALJ inadequately judged the consistency of both N.P. Palmer's and Ms. Batson's reports because she failed to consider that the reports were consistent with each other. Perhaps the ALJ should have made that observation. However, because the ALJ concluded that both reports were inconsistent with the treatment notes, with the fact that Kathleen J. was on reduced medicine during her pregnancies, and with the findings of Drs. Rings and Gavazzi, I cannot conclude that a remand for this reason would affect the outcome of this case. Therefore, no remand is necessary. *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005).

V.     *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE